FILED

2007 Mar-07  AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BONNYE JANE HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-2118-NE |
| | ) | |
| SOUTHERN MEDICAL | ) | |
| EQUIPMENT and DONALD JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bonnye Jane Hunter filed this case against defendants Southern Medical Equipment Corporation ("Southern Medical"), her former employer, and Donald Jones, who is the President of Southern Medical and plaintiff's former direct supervisor.  She asserts claims of sexual harassment, constructive discharge, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  She also asserts supplemental state law claims for assault and battery; invasion of privacy; outrage; and negligent or wanton hiring, training, supervision and retention.  Her state law claims are asserted against both Southern Medical, and against Jones *in his individual capacity*.[1]  The case currently is before the court on defendants' motion to compel arbitration.[2]

---

[1]*See* doc. no. 1 (Complaint).

[2]Doc. no. 6.

PART ONE

*Relevant Facts*

Southern Medical is in the business of providing medical equipment and supplies to home healthcare patients in Alabama and Tennessee.  In the course of conducting this business, Southern Medical occasionally ships medical supplies to patients in other states, and it deals with vendors both within and outside the State of Alabama.[3]

Southern Medical's Employee Handbook contains a provision entitled "Employment Arbitration Policy" (sometimes referred to as the "Arbitration Policy"). The relevant language of that provision reads as follows:

> With the exceptions listed below,[4] binding arbitration is the final, exclusive, and required forum for the resolution of all employment-related disputes which are based on a legal claim.  Since many employment disputes can be successfully resolved in the IDR process,[5] an employee may not resort to arbitration under this Policy unless the employee has first completed the IDR process.  If an employment-

---

[3]Doc. no. 8 (Declaration of Donald Jones), at ¶¶ 8-9.

[4]The Arbitration Policy goes on to state several types of claims that are not subject to mandatory arbitration, including claims filed with a governmental administrative agency, such as the National Labor Relations Board, the Department of Labor, or the Equal Employment Opportunity Commission; claims for workers' compensation or unemployment compensation benefits; and claims which do not state a claim for relief under applicable law.  *See* doc. no. 11 (Declaration of Bonnye Jane Hunter), Exhibit A (Southern Medical Employee Handbook), at 21.

[5]This reference is to SMEC's Internal Dispute Resolution Policy, which requires an employee with an employment-related concern to first submit the concern to the Human Resources Manager for resolution.  If the employee is not satisfied with the initial internal result, she may appeal to the company's President.  If the employee still is not satisfied with the result, she may then commence arbitration proceedings.  *Id.* at 19-20.

related dispute is not resolved through the IDR process and the matter is based on a legal claim, any party to the dispute may initiate arbitration.

A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state, or local statute, regulation, or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but without limitation: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1866; the Civil Rights Act of 1991; The Equal Pay Act; the Fair Labor Standards Act; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Uniform Services Employment and Reemployment Rights Act of 1994; the Americans With Disabilities Act; the Employee Retirement Income Security Act of 1974; the Family and Medical Leave Act; the Fair Credit Reporting Act; the Alabama Age Discrimination Act of 1997; Code of Alabama § 25-5-11.1 (prohibiting the discharge of an employee solely because the employee sought workers' compensation benefits or solely because the employee filed written notice of a safety violation); breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory.

This Policy covers any dispute subject to arbitration which is brought on or after the Policy's applicable effective date, even if the alleged act or omission occurred prior to the effective date.

. . . .

With respect to SMEC, this Policy is effective October 31, 2001. With respect to a current or future employee of SMEC, this policy becomes effective when (1) it is effective as to SMEC *and* (2) *it is agreed to by such employee as reflected by the employee's signature on the* ***EMPLOYEE'S SPECIFIC ACKNOWLEDGMENT OF APPLICABILITY OF SMEC's INTERNAL DISPUTE RESOLUTION POLICY AND EMPLOYMENT ARBITRATION POLICY*** *which is the final page of this Employee Handbook.*[6]

---

[6]*Id.* at 20-22 (boldface emphasis in original, italicized emphasis supplied).

Appended to the Employee Handbook are two sample acknowledgment forms. The first is the "**EMPLOYEE'S ACKNOWLEDGMENT OF RECEIPT OF EMPLOYEE HANDBOOK**" form.[7]  That form requires the employee to sign below a statement that provides, in pertinent part:

> I have received a copy of the Employee Handbook of Southern Medical Equipment Corporation ("SMEC") on the date indicated below. I understand that I am charged with knowledge of the contents of this Employee Handbook.  I understand the following concerning this Employee Handbook and the policies of SMEC: This Employee Handbook and other statements of SMEC's policy are prepared **for informational purposes** only.  Except for the provisions of the Employment Arbitration Policy, the provisions of this Employee Handbook do **not** establish **a contract** or any particular terms or conditions of employment between myself and SMEC and should not be construed as such.  The policies of SMEC may be changed or amended at any time, with or without notice.  Employment by SMEC is not for a definite term and may be terminated by SMEC or myself at any time, for any lawful reason.  No supervisor or representative of SMEC, other than its President, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement inconsistent with this acknowledgment; to be valid, any such agreement must be **in writing, designated as an employment agreement**, and **signed** by SMEC's President.[8]

The second sample acknowledge form appended to the Employee Handbook is the "**EMPLOYEE'S SPECIFIC ACKNOWLEDGMENT OF APPLICABILITY OF SOUTHERN MEDICAL EQUIPMENT**

---

[7]*Id.* at 23 (emphasis in original).

[8]*Id.* (emphasis in original).

**CORPORATION'S INTERNAL DISPUTE RESOLUTION POLICY AND EMPLOYMENT ARBITRATION POLICY**."[9]  This acknowledgment form requires the employee to sign below the following statement:

> I specifically acknowledge that I have received a copy of SMEC's Internal Dispute Resolution Policy and Employment Arbitration Policy. I acknowledge that these policies provide the opportunity for prompt and objective review of employment concerns.  I understand that arbitration is the final, exclusive, and required forum for the resolution of any employment-related dispute between SMEC and myself which is based on a legal claim.  I agree to submit to arbitration under SMEC's Employment Arbitration Policy any employment-related dispute based on a legal claim which I may have with SMEC.[10]

Defendant Donald Jones, the President of Southern Medical, stated in his declaration that all Southern Medical employees "are required to acknowledge that they have received a copy of the Handbook and have read and understood its contents by executing a [sic] Acknowledgment Form."[11]  He also states that he personally provided plaintiff with a copy of the Employee Handbook, and "as a matter of course, [he] would have required plaintiff to execute an Acknowledgment Form confirming that she read and understood the policies and procedures contained in the Handbook."[12]  Even so, Southern Medical could not located any Acknowledgment

---

[9]*Id.* at 24 (emphasis in original).

[10]*Id.*

[11]Jones Declaration, at ¶ 5.

[12]*Id.* at ¶ 6.

Form executed by plaintiff.[13]

Plaintiff acknowledges that she received a copy of Southern Medical's Employee Handbook at or around the time she commenced her employment there.[14] She also states, however, "I was not asked to sign, and I do not remember signing, the Employees [sic] Specific Declaration of Acknowledgment of Southern Medical Equipment Corporation's Internal Dispute Resolution Policy and Employment Arbitration Policy . . . .  I never expressly agreed to arbitrate any disputes I might have with Southern Medical Equipment Corporation."[15]  Plaintiff still possesses the unsigned Acknowledgment Form she received along with her copy of the Employee Handbook.[16]

## PART TWO

### *Discussion*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA" or "the Act"), establishes a national policy favoring arbitration of disputes.  *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

---

[13]*Id.* at ¶ 7.

[14]Hunter Declaration, at 1.

[15]*Id.* at 1-2.

[16]*Id.* at 2.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).  "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

The existence of a valid contract to arbitrate is determined by state law.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  There are two prerequisites for a valid arbitration contract under Alabama law:  "(1) there must be a written agreement calling for arbitration[;] and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce."  *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citation omitted).

Neither party disputes that the Arbitration Policy in Southern Medical's Employee Handbook relates to plaintiff's employment, and that plaintiff's employment with Southern Medical involves interstate commerce.  The parties also do not dispute that plaintiff's claims in this lawsuit are among the types of claims covered by the Arbitration Policy.  Instead, the only remaining dispute is whether plaintiff entered into a written agreement with Southern Medical to arbitrate all employment-related claims.

Southern Medical's Employment Arbitration Policy is, of course, contained

-7-

within a writing, *i.e.,* the Employee Handbook.  Nonetheless, plaintiff argues that she never agreed to the terms of the Arbitration Policy because she never signed the relevant Acknowledgment Form.  Southern Medical argues, first, that plaintiff *must* have signed the Acknowledgment Form for the Arbitration Policy because *all* employees are required to sign the form.  The court will not accept Southern Medical's invitation to engage in such conjecture, in light of Southern Medical's inability to produce a copy of the Acknowledgment Form actually signed by plaintiff, and Jones' failure to specifically state that he directly witnessed plaintiff signing the form.

Southern Medical also argues that plaintiff's signature on the Acknowledgment Form is not necessary, because plaintiff accepted the terms of the Arbitration Policy when she continued to work at Southern Medical after receiving a copy of the Employee Handbook containing the policy.  This argument requires more careful evaluation.

It is true that, "while the [Federal Arbitration Act] requires that the arbitration agreement be in writing, it does not require that it be signed by the parties."  *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir. 2005).  Courts have enforced arbitration agreements despite the lack of an employee's signature when the company's arbitration policy does not require the signature, and when the policy

explicitly provides that the employee will accept the terms of the agreement by her continued employment with the company. *See, e.g., id.* at 1365, 69-70 (upholding a decision to compel arbitration pursuant to an agreement that stated, "The submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance of the [arbitration policy]. No signature shall be required for the policy to be applicable."); *Baptist Health System, Inc. v. Mack,* 860 So. 2d 1265, 1267-68, 72-74 (Ala. 2003) (holding that a motion to compel arbitration should have been granted when the plaintiff had signed an acknowledgment form pursuant to an arbitration agreement that stated, "By remaining or becoming employed after receiving notice of this [arbitration policy], you consent to resolution by arbitration of any dispute, whether or not arising out of your employment . . . or its termination, that you may have with or against [the company] or that [the company] may have with or against you, except as otherwise provided herein.").

Here, the Arbitration Policy does not provide that continued employment will constitute acceptance of the policy's terms, and it *does* explicitly require the employee's signature on an acknowledgment form in order to be effective. Southern Medical has offered no authority to support enforcing an arbitration agreement under these circumstances. Therefore, the court must construe the Arbitration Policy under

general Alabama contract law principles.  Under Alabama law, a court interpreting a contract "should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state."  *Brewbaker Motors, Inc. v. Belser,* 776 So. 2d 110, 112 (Ala. 2000) (citing *Pacific Enters Oil Co. v. Howell Petroleum Corp.,* 614 So. 2d 409 (Ala. 1993)). Additionally, the court should adopt a construction that gives effect to all terms used in the contract.  *Sullivan, Long & Hagerty v. Southern Electric Generating Co.,* 667 So. 2d 722, 725 (Ala. 1995) (citing *Federal Land Bank of New Orleans v. Terra Resources, Inc.,* 373 So. 2d 314 (Ala. 1979)).

Southern Medical's Employment Arbitration Policy clearly states that it will not become effective with regard to any particular employee *until the employee signs an acknowledgment form under the policy.*  There is no evidence that plaintiff signed an acknowledgment form.  Thus, according to the plain terms of the Arbitration Policy itself, plaintiff did not enter into an enforceable agreement to arbitrate any claims against Southern Medical, and defendants' motion to compel arbitration is due to be denied with regard to plaintiff's claims against Southern Medical.

Finally, as plaintiff points out, she never entered into an agreement to arbitrate any claims against Donald Jones, the individual defendant.  Thus, to the extent defendants seek arbitration of individual claims against Jones, their motion to compel

arbitration is due to be denied.

### PART THREE

### *Conclusion and Order*

In accordance with the foregoing, defendants' motion to compel arbitration is DENIED.  The parties are reminded of their obligations under the Scheduling Order entered on February 27, 2007.[17]

DONE this 7th day of March, 2007.

_____
United States District Judge

---

[17]Doc. no. 16.